IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ERIC N. YERKES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANAPOL WEISS, et al.,<br><br>　　　　Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 17-2493-KMW-AMD<br><br>**OPINION & ORDER** |

**WILLIAMS, District Judge:**

This matter having come before the Court on the Motions *in Limine* filed by the parties, and the Court having read the submissions and heard the arguments of counsel during the hearing held on January 3, 2023, and the Court noting the appearances of counsel: Edward T. Kang, Esquire, David R. Scott, Esquire and Gregory Matthews, Esquire, appearing on behalf of the plaintiff; and Joseph Goldberg, Esquire and Georgios Farmakis, Esquire, appearing on behalf of the defendant; and for the reasons set forth on the record, and for the reasons that follow, Defendant's Motions *in Limine* Barring Testimony of Plaintiff's Expert on Taxes and to Preclude Evidence of Tax Liability (ECF Nos. 159, 160) will be granted.

1. On August 18, 1981, Plaintiff sustained "severe and permanent injuries" in a plane crash near the Grand Canyon in Arizona. (ECF No. 1), Compl. ¶¶ 7, 8.[1] The plane was manufactured by the Cessna Aircraft Company and operated by Grand Canyon Airways. *Id.* at ¶ 9. Plaintiff subsequently retained the Defendant firm and its founder, Paul

---

[1] For the sake of clarity, the Court notes that Plaintiff filed an Amended Complaint (ECF No. 81), but it was stricken per the Order of Judge Ann Marie Donio on August 21, 2019 (ECF No. 87). Therefore, the operative document for this analysis is the original Complaint filed in this matter on April 12, 2017 (ECF No. 1).

Anapol, Esq., to bring a personal injury lawsuit against Cessna and Grand Canyon. *Id.* at ¶ 10.

2. On or about April 1, 1986, Plaintiff entered into a settlement agreement with Cessna (the "Cessna Settlement Agreement") for a cash payment of $125,000, periodic payments consisting of $1,000 per month for life, and increasing lump sum payments every five years (the "Periodic Payments"). *Id.* at ¶ 16. As part of the Cessna Settlement Agreement, Cessna's insurer, Lloyds of London, purchased an annuity policy from Executive Life Insurance Company of New York ("ELNY") for the payment of the Periodic Payments to Plaintiff and assigned all of Cessna's obligations under the Cessna Settlement Agreement to ELNY. *Id.* at ¶ 20.

3. These payments were "for the purpose of and with the expectation of providing for [Plaintiff's] future needs, taking into account the seriousness and lasting nature of his injuries sustained in the plane crash and his young age." *Id.* at 18.

4. In connection with the Cessna Settlement Agreement, Defendant provided Plaintiff with a "Recapitulation/Distribution" statement stating that under the Cessna Settlement Agreement: "All Periodic Payments Guaranteed to Eric N. Yerkes By The Cessna Aircraft Company" and "The Total Payout, Assuming a 59 Year Life-Expectancy is $6,668,000.00 of Which All but the Sum of $468,000.00 is Guaranteed by Cessna." *Id.* at ¶ 23.

5. Plaintiff received the Periodic Payments as scheduled until August 8, 2013. *Id.* at ¶ 34. On August 8, 2013, a restructuring agreement of ELNY closed and the Guaranty Association Benefits Company ("GABC") took over the assets of ELNY, including the Periodic Payments. *Id.* at ¶ 33. As a result, effective August 8, 2013, the Periodic

2

Payments were reduced to just 43.54% of their agreed-upon amount. *Id.* at ¶ 35. The reduction of the Periodic Payments was approved by the New York Supreme Court, Nassau County, thus leaving Plaintiff with no recourse against ELNY or GABC. *Id.* at ¶ 36.

6. Plaintiff commenced this action against Defendant on April 12, 2017 alleging legal malpractice (Count I), unjust enrichment (Count II), and breach of contract (Count III). *Id.* at 9-12. Plaintiff asserted that, as result of Defendant's conduct, Plaintiff did not receive "fair and adequate compensation relating to injury sustained from the plane crash." *Id.* at ¶ 77.

7. Defendants narrowed their evidentiary issues and filed several motions *in limine*, two of which are relevant here: Defendant's Motion to Exclude Expert Testimony (ECF No. 159) and other evidence of tax liability (ECF No. 160). Crucially, the disagreement between the Parties is whether Plaintiff's recovery in this litigation would be taxable.

8. Taxation applies to gross income, which includes all income from whatever source derived. *See* 26 U.S.C. § 61(a); *see also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955).

9. Exclusions to this general maxim must be narrowly construed. *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment).

10. Therefore, settlement proceeds constitute gross income unless some or all of those proceeds fall within a specific statutory exception. *Blum v. Commissioner of Internal Revenue*, No. 20020-17, 2021 WL 632330 at *7 (T.C. Feb. 18, 2021).

11. 26 U.S.C. § 104(a)(2) ("Section 104(a)(2)") provides an exception to compensation for injuries or sickness, and in pertinent part states: "Except in the case of amounts attributable

3

to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include [. . .] the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness[.]"

12. In order for the exception provided by Section 104(a)(2) to apply, a movant must show that there is "'a direct causal link between the damages and the personal injuries sustained.'" *Blum*, 2021 WL 632330 at *7-8 (citing *Doyle v. Commissioner of Internal Revenue*, No. 26734-14, 2019 WL 468974 at *11 (T.C. Feb. 6, 2019); quoting *Rivera v. Baker W., Inc.*, 430 F.3d 1253, 1257 (9th Cir. 2005)).

13. "When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for the settlement controls whether the damages are excludable under section 104(a)(2)." *Id.* (citing *Burke*, 504 U.S. at 237).

14. The nature of the claim is derived from the terms of the agreement. *See Rivera*, 430 F.3d at 1257.

15. "Thus, when damages are paid through a settlement agreement, we will look first to the underlying agreement to determine whether it expressly states that the damages compensate for 'personal physical injuries or physical sickness' under § 104(a)(2)." *Id.*

16. The express language should specify the purpose of the compensation as personal physical injuries or physical sickness. *See Pipitone v. United States*, 180 F.3d 859, 863 (7th Cir. 1999).

17. If the agreement is unclear, "the intent of the payor" is pertinent to examine, taking into consideration the amount paid, the factual circumstances leading to the settlement, and the

4

allegations in the injured party's complaint. *See Devine v. Commissioner of Internal Revenue*, No. 16329-15, 2017 WL 2558814 at *11 (T.C. Jun. 13, 2017); *Green v. Commissioner of Internal Revenue*, 507 F.3d 857, 868 (5th Cir. 2007); *Bent v. Commissioner of Internal Revenue*, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987).

18. The "ultimate inquiry" is into the "basic reason" for the payment, which is a highly factual inquiry. *Agar v. Commissioner of Internal Revenue.*, 290 F.2d 283, 284 (2d Cir. 1961); *Seay v. Commissioner of Internal Revenue*, 58 T.C. 32, 37 (1972).

19. To put it another way, "In lieu of what were the damages awarded?" *Fono v. Commissioner of Internal Revenue*, 79 T.C. 680, 692 (1982); *see also Francisco v. United States*, 267 F.3d 303, 319 (3d Cir.2001); *Gerstenbluth v. Credit Suisse Securities (USA) LLC*, 728 F.3d 139, 144 (2d Cir. 2013); *Milenbach v. Comm'r*, 318 F.3d 924, 932 (9th Cir.2003); accord *Espinoza v. Comm'r*, 636 F.3d 747, 750 (5th Cir.2011); *Delaney v. Comm'r*, 99 F.3d 20, 23–24 (1st Cir.1996).

20. The impetus underlying Section 104(a)(2) is understood as the "human capital" rationale which represents "the principle that a restoration of capital was not income." *O'Gilvie v. United States*, 519 U.S. 79, 84 (1996); *see also Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 187 (1918); *Southern Pac. Co. v. Lowe*, 247 U.S. 330, 335 (1918).

21. Recovery for personal injury "merely take[s] the place of capital in human ability which was destroyed by the accident." *O'Gilvie*, 519 U.S. at 85 (internal citations omitted).

22. The replenishment of human capital, in the form of damages, "aim [s] to substitute for a victim's physical or personal well-being—personal assets that the Government does not tax and would not have taxed had the victim not lost them." *Id.* at 86.

5

23. The statute only permits tax exemption on "damages that, making up for a loss, seek to make a victim whole, or, speaking very loosely, 'return the victim's personal or financial capital.'" *Id. See also Francisco*, 267 F.3d at 307.

24. It is the practice of the Tax Court, and the Internal Revenue Service ("IRS") to respect the parties' explicit intent as determined by the settlement agreement. INTERNAL REVENUE SERVICE, TAX IMPLICATIONS OF SETTLEMENTS AND JUDGEMENTS, (Nov. 18, 2022), https://www.irs.gov/government-entities/tax-implications-of-settlements-and-judgments ("The IRS is reluctant to override the intent of the parties."); *See Gerstenbluth v. Credit Suisse Securities (USA) LLC*, 728 F.3d 139, 146 n.12 (2d Cir. 2013) (citing *Bagley v. Comm'r*, 105 T.C. 396, 406 (1995)); *see also* 5 MERTENS LAW OF FED. INCOME TAX'N § 24A:10 (Feb. 2023 Update) ("Generally speaking, the Service or the courts will respect an allocation in a settlement agreement if the allocation is made in good faith in an adversarial context."); MERTENS, 24A:10 at n.2 (collecting cases).

25. Based on the foregoing, the Court must begin its analysis with the contemplated settlement agreement submitted by the parties as Exhibit A to Defendants' Motion to Supplement Defendants' Motions *in Limine* Barring Testimony of Plaintiff's Expert on Taxes (ECF No. 159) and Defendant's Motion *in Limine* to Preclude Evidence of Tax Liability (ECF No. 160) (ECF No. 190).

26. The Contemplated Settlement Agreement (ECF No. 190) is abundantly clear, with express terms, that the compensation being provided to Plaintiff is to directly replace the capital Plaintiff previously received from Executive Life Insurance Company of New York ("ELNY") for the serious and permanent injuries Plaintiff sustained in the 1981 plane crash. *Id.* at 1-2.

27. Specifically, "taking into account of the personal physical injuries Eric Yerkes has sustained as well as his past, present, and future medical needs as a result of those personal injuries, the Parties have chosen to enter into this Agreement to resolve all claims asserted, or that could have been asserted, in the Lawsuit[.]" *Id.* at 2.

28. The Contemplated Settlement Agreement is replete with the Parties' intent that the settlement monies are for "compensation for [Plaintiff's] severe personal physical injuries." *Id.* at 2.

29. For example, the entire first page of recitals of the Contemplated Settlement Agreement describes the origins of Plaintiff's physical injury claims from the plane crash near the Grand Canyon in Arizona, and the original payments provided to him being part of a qualified assignment of the IRS Code to fall under Section 104(a)(2). *Id.* at 1.

30. While the settlement does release Defendants from the lawsuit's allegations of legal malpractice, unjust enrichment, and breach of contract, the parties are explicit in their intent for "[t]he Settlement Payment [being] intended as a settlement of the portion of the Periodic Payments that Eric Yerkes has not received, and will not receive, following the ELNY Restructuring. The Settlement Payment is intended as a resolution of a claim for personal physical injuries and is intended to maintain the classification under Section 104(a)(2) of the IRS Code that the Periodic Payments hold." *Id.* at 3.

31. In essence, the Parties' settlement monies are intended to be in lieu of the Periodic Payments, a one-to-one replacement to restore what was in place of Plaintiff's lost human capital. *See Francisco*, 267 F.3d at 307 (citing *O'Gilvie*, 519 U.S. at 86) ("[The] replenishment of human capital, in the form of damages, "aim [s] to substitute for a victim's

7

physical or personal well-being—personal assets that the Government does not tax and would not have taxed had the victim not lost them.").

32. Because the Contemplated Settlement Agreement is so clear on the Parties' intent to utilize the Settlement amount to substitute in for Plaintiff's original damages award that was to compensate Plaintiff for severe and permanent physical injuries, the Court need not delve into the context of the claims to divine the Payor's (in this case, Defendants') intent. *See Pipitone*, 180 F.3d at 863.

33. However, to emphasize the consistent and clearly expressed understanding that any recovery in this matter would be to restore Plaintiff's lost human capital, the Court will note that, like in *Seay v. Commissioner of Internal Revenue*, both Plaintiff and Defendants have provided evidence that they agree on the nature of the potential settlement payment as being for personal injury. *Seay*, 58 T.C. at 38.

34. In their Motions *in Limine* (ECF Nos. 159, 160, 190), Defendants have asserted repeatedly that the nature of any recovery in this case is connected to the personal injury of Plaintiff from the 1981 plane crash. *See* (ECF No. 159) at 4-5; (ECF No. 160) at 4-5; (ECF No. 190) at 1-3.

35. This matter stands in stark contrast to *Knuckles v. C.I.R.*, 349 F.2d 610, 613 (10th Cir. 1965) and *Agar*, 290 F.2d at 284, both cases where the defendant-payor disclaimed the settlement as being for the purpose of resolving physical injury claims, and where in *Knuckles* the Plaintiff alleged personal injuries only after negotiators noted the tax advantage of potentially settling based on personal injuries. The Parties in this case have consistently asserted personal injury as the origin and nature of the claims in this matter. *United States v. Gilmore*, 372 U.S. 39, 44 (1963).

36. The Court notes that it does not need to reach beyond the Contemplated Settlement Agreement because the Parties have expressly stated that the damages are intended to compensate for the personal physical injuries of Plaintiff. *Rivera*, 430 F.3d at 1257.

37. Additionally, the most recent case to address a Section § 104(a)(2) claim in a somewhat similar context to the instant matter, *Blum v. Commissioner of Internal Revenue*, provides additional support for this Court's conclusions. No. 20020-17, 2021 WL 632330 (T.C. Feb. 18, 2021).

38. In *Blum*, the plaintiff brought a lawsuit for personal injuries against a hospital but was unsuccessful. *Id.* at *3-4. The plaintiff brought a malpractice suit for failing to prosecute her case and settled for $125,200. *Id.*

39. The court in *Blum* determined that her settlement would not fall into the Section 104(a)(2) exception for several reasons. First, the settlement agreement entered into by the parties in *Blum* affirmatively stated that the agreement was to solely settle the legal dispute, a malpractice claim, between them. *Id.* at *10. Second, because plaintiff did not allege in her complaint that she had suffered any physical injuries and did not disclose that she was seeking compensation for physical injuries. *Id.* at *11. Third, the court noted that it was not convinced that the plaintiff had a "loss" of human capital or otherwise at all because the purported loss she claimed was the amount she "might have received from winning her personal injury lawsuit." *Id.* at *12. Not only is this position extremely speculative, it is also clear that the plaintiff was attempting to be compensated for the "distinct failings by her former lawyers," rather than restoring any type of capital lost due to severe or permanent injury. *Id.*

40. In contrast, here Plaintiff has expressly stated personal physical injuries as the basis of his lawsuit in the Complaint, which carefully reviewed and described Plaintiff's loss in the context of his personal injury claim. *See* (ECF No. 1) Compl. at ¶¶ 1, 7, 8, 14, 16, 18, 77.

41. Moreover, in this case Plaintiff was awarded damages for severe and permanent injuries, and the intent of the parties has been clear throughout the matter, in multiple filings from both Plaintiff and Defendant, that the Contemplated Settlement Agreement is not to simply settle a malpractice claim, but to substitute Plaintiff's awarded damages, which were drastically reduced due to ELNY's restructuring, with the contemplated settlement here. The parties have made it crystal clear that they are settling the case for the sole purpose of returning Plaintiff's human capital (in the form of damages) to make him whole. (ECF No. 190 at Ex. A).

THE COURT FINDING that given the above, it is clear from the Contemplated Settlement Agreement, as well as the consistent characterization of Plaintiff's potential recovery as one of recovering for physical injury throughout the litigation, the Court is satisfied that the paramount reason for the settlement is to compensate Plaintiff for the physical injuries he suffered in the 1981 plane crash.

THE COURT FURTHER FINDING that the Contemplated Settlement Agreement is "in lieu" of Plaintiff's human capital that was lost in the 1981 plane crash, as the Contemplated Settlement Agreement is intended to be a one-to-one replacement of the damages awarded to Plaintiff from his original suit alleging physical injury.

THE COURT FURTHER FINDING that this Opinion stays faithful to the principle of the "human capital" rationale that emanates from Section § 104(a)(2) as instructed by the Supreme Court in *O'Gilvie*. 519 U.S. at 86.

IT IS on this 14th day of **February 2023,** hereby

**ORDERED** that Defendant's Motion *in Limine* Barring Testimony of Plaintiff's expert on Taxes (ECF. No. 159) and Defendant's Motion *in Limine* to Preclude Evidence of Tax Liability (ECF. No. 160) is **GRANTED**.

Dated: February 14, 2023

KAREN M. WILLIAMS
United States District Judge